UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON BIBBS,<br><br>　　　　　Petitioner,<br><br>　　　v.<br><br>SANDRA HUTCHENS,<br><br>　　　　　Respondent. | Case No. CV 20-6165-JVS (KK)<br><br>FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This Final Report and Recommendation is submitted to the Honorable James V. Selna, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.

## **SUMMARY OF RECOMMENDATION**

Petitioner Brandon Bibbs ("Petitioner") has filed a pro se Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254, challenging his 2016 state convictions for robbery. ECF Docket No. ("Dkt.") 1, Petition. Petitioner asserts claims of (1) unlawful arrest and (2) ineffective assistance of counsel. Because Petitioner's claims fail on their merits, the Court recommends denying the Petition.

///

## II.

## **PROCEDURAL HISTORY**

**A.      STATE COURT PROCEEDINGS**

On April 19, 2016, Petitioner pleaded guilty in Orange County Superior Court to two counts of robbery with a firearm in violation of section 211 of the California Penal Code in case no. 14WF0245.  Pet. at 2; lodgs. 1, 2.[1]  On the same date, pursuant to the plea agreement, Petitioner was sentenced to three years in prison on Count One and one year in prison on Count Two.  Pet. at 2; lodgs. 2, 3.  The court granted Petitioner 1,645 days of custody credit.  Lodgs. 2 at 3; 3 at 2.  The court, therefore, found Petitioner's prison term had been served and ordered him "released on this

---

[1]      The Court's citations to Lodged Documents refer to documents lodged in support of Respondent's Motion to Dismiss.  See dkt. 8.  Respondent identifies the lodged documents as follows:

   1.   Change of plea, filed April 19, 2016, in Orange County Superior Court case no. 14WF0245 ("Lodg. 1")

   2.   Court minutes in Orange County Superior Court case no. 14WF0245 ("Lodg. 2")

   3.   Abstract of judgment, filed April 20, 2016, in Orange County Superior Court case no. 14WF0245 ("Lodg. 3")

   4.   State habeas petition filed September 28, 2018, in Orange County Superior Court case no. M17708 ("Lodg. 4")

   5.   Orange County Superior Court order denying state habeas petition, filed November 16, 2018, in case no. M17708 ("Lodg. 5")

   6.   State habeas petition filed, January 30, 2019, in California Court of Appeal case no. G057290 ("Lodg. 6")

   7.   California Court of Appeal order denying state habeas petition, filed March 1, 2019, in case no. G057290 ("Lodg. 7")

   8.   State habeas petition filed, January 21, 2020, in California Supreme Court case no. S260290 ("Lodg. 8")

   9.   California Supreme Court docket reflecting order denying state habeas petition in case no. S260290 ("Lodg. 9").

2

case only." Lodg. 2 at 4. Petitioner was ordered to report to the Parole Authority within 72 hours of release. Id.

Petitioner did not file a direct appeal. Pet. at 2-3.

On September 28, 2018, Petitioner filed a petition for writ of habeas corpus in Orange County Superior Court in case no. M-17708.[2] Pet. at 3; lodg. 4. On November 16, 2018, the superior court denied the petition. Pet. at 4; lodg. 5.

On January 17, 2019, Petitioner constructively filed a petition for writ of habeas corpus in the California Court of Appeal in case no. G057290. Pet. at 4; lodg. 6. On March 1, 2019, the Court of Appeal denied the petition. Pet. at 4; lodg. 7.

On January 21, 2020, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court in case no. S260290. Pet. at 4; lodg. 8. On April 1, 2020, the California Supreme Court denied the petition because "habeas corpus relief is unavailable where the petitioner is not in the custody of California authorities as a result of the challenged conviction." Pet. at 5; lodg. 9.

**B.  FEDERAL HABEAS PETITION**

On May 9, 2020, Petitioner constructively filed the instant Petition in this Court. Dkt. 1.

On July 14, 2020, the Court issued an Order to Show Cause Why This Action Should Not Be Dismissed for lack of jurisdiction ("OSC") because it appeared Petitioner was not in custody on the 2016 convictions he is challenging. Dkt. 3.

On July 22, 2020, Petitioner constructively filed a response to the OSC stating he "remains in the constructive custody of the Orange County Sheriff's Department,

---

[2] Under the "mailbox rule," when a pro se prisoner gives prison authorities a pleading to mail to court, the court deems the pleading constructively "filed" on the date it is signed. Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010) (citation omitted). While Petitioner states in the Petition that the superior court petition was filed on September 24, 2018 in Orange County Superior Court, Pet. at 3-4, the copy of the superior court petition lodged with the Court is undated, Lodg. 4. Therefore, Petitioner is not entitled to the benefit of the mailbox rule regarding the filing date of the petition filed in the Orange County Superior Court.

3

county supervision parole, upon the conviction that was brought by a misapprehension of the law (illegal arrest; ineffective assistance of counsel), as contended originally in this matter." Dkt. 4.

On August 14, 2020, the Court issued an Order requiring Respondent to file a response to the Petition. Dkt. 5.

On January 6, 2021, Respondent filed an Answer to the Petition. Dkt. 15. Petitioner did not file a Traverse.

On March 1, 2021, the Court issued a Report and Recommendation recommending the Petition be denied on the merits. Dkt. 16. On March 22, 2021, Petitioner filed Objections to the Report and Recommendation, objecting to portions of the Court's analysis and clarifying portions of Petitioner's arguments. Dkt. 18. The Court issues this Final Report and Recommendation to address those clarifications to Petitioner's claims in subsections VI. B.4.a. and B.4.a.iii, below.

The matter thus stands submitted.

### III.

### **SUMMARY OF FACTS**

Petitioner pleaded guilty before trial and did not appeal his convictions. In addition, a complete copy of the preliminary hearing transcript has not been lodged with the Court.[3] Accordingly, the facts underlying Petitioner's convictions are not entirely apparent from the record before the Court. To the extent the facts of Petitioner's crimes are material to the Court's analysis, such facts are discussed below with citations to the police reports Petitioner attached to his state court habeas petitions.

///

///

---

[3] Petitioner attached the first five pages of the preliminary hearing transcript to his state court habeas petitions. Dkt. 8-8 at 6-10; dkt. 8-22 at 7-13.

4

## IV.
## PETITIONER'S CLAIMS FOR RELIEF

Petitioner presents the following two claims in the Petition:

1. Petitioner was illegally arrested in violation of his Fourth Amendment rights (Claim One); and
2. Petitioner's trial counsel was ineffective for failing to move to suppress illegally obtained evidence, failing to correspond with Petitioner, and misinforming Petitioner about state evidentiary law requiring the corroboration of accomplice testimony (Claim Two).

Pet. at 5-6.

Respondent contends Petitioner's claims fail on their merits.[4] Dkt. 15.

## V.
## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant habeas relief on a claim adjudicated on its merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

---

[4] Respondent also argues Petitioner has failed to name a proper respondent and the Petition is untimely. Dkt. 15 at 7-12. For the reasons stated in the Court's December 10, 2020 Order, the Court considers the claims on the merits rather than addressing these procedural issues. See Lambrix v. Singletary, 520 U.S. 518, 525 (1997); Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002).

5

1 "'[C]learly established Federal law' for purposes of § 2254(d)(1) includes only 'the holdings, as opposed to the dicta, of th[e] [United States Supreme] Court's decisions'" in existence at the time of the state court adjudication. White v. Woodall, 572 U.S. 415, 419, 426 (2014) (citation omitted). However, "circuit court precedent may be 'persuasive' in demonstrating what law is 'clearly established' and whether a state court applied that law unreasonably." Maxwell v. Roe, 628 F.3d 486, 494 (9th Cir. 2010) (citation omitted).

Overall, AEDPA presents "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 19 (2013). The federal statute presents "a difficult to meet . . . and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (internal citation and quotation marks omitted). On habeas review, AEDPA places the burden on petitioners to show the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). Put another way, a state court determination that a claim lacks merit "precludes federal habeas relief so long as fairminded jurists could disagree" on the correctness of that ruling. Id. at 101. Federal habeas corpus review therefore serves as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Id. at 102-03 (citation and internal quotation marks omitted).

Where the last state court disposition of a claim is a summary denial, this Court must review the last reasoned state court decision addressing the merits of the claim under AEDPA's deferential standard of review. Maxwell, 628 F.3d at 495; see also Berghuis v. Thompkins, 560 U.S. 370, 380 (2010); Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991).

6

Here, the November 16, 2018 Orange County Superior Court opinion on habeas review, see lodg. 5, stands as the last reasoned decision with respect to Petitioner's claims. Hence, Petitioner's claims will be reviewed under AEDPA's deferential standard of review for claims "adjudicated on the merits." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 99.

## VI.
## DISCUSSION

### A. ILLEGAL ARREST

#### 1. Background

In Claim One, Petitioner contends his arrest violated his Fourth Amendment rights because (1) the arresting officer "arrested the petitioner after conducting a field show line up that the petitioner was not identified in" and 2) the arrest was not supported by probable cause within the required 48-hour period because the arresting officer made "material omissions [] in a declaration." Pet. at 5. In his California Supreme Court habeas petition, Petitioner clarified that these "material omissions" were the arresting officer's failure to state that the victim initially was unable to identify Petitioner at the field showup. Dkt. 8-15 at 4.

#### 2. State Court Opinion

The Orange County Superior Court denied Petitioner's claim based on Petitioner's admission of guilt and plea to the charges against him, which constituted a waiver of any challenge to the evidence against him. Lodg. 5 at 4.

#### 3. Petitioner's Claim is Barred by Tollett v. Henderson

First, Petitioner's claim is foreclosed by his guilty plea. In Tollett v. Henderson, the United States Supreme Court explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims

7

1 relating to the deprivation of constitutional rights that occurred prior to
2 the entry of the guilty plea. He may only attack the voluntary and
3 intelligent character of the guilty plea.
4 411 U.S. 258, 267 (1973). Hence, because Petitioner's challenge to the validity of his
5 arrest does not concern the voluntary and intelligent nature of his plea, his claim is
6 barred by Tollett.

**4. Petitioner's Claim is Barred by Stone v. Powell**

Second, even if Petitioner's claim is not barred by Tollett, his claim remains barred by Stone v. Powell, 428 U.S. 465 (1975). In Stone, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 494. In determining whether a habeas petitioner has had a full and fair opportunity to litigate his Fourth Amendment claim in state court, "[t]he relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." Id.; see also Gordon v. Duran, 895 F.2d 610, 613 (9th Cir. 1990).

In California, section 1538.5 of California Penal Code provides criminal defendants with a full and fair opportunity to litigate their Fourth Amendment claims through a motion to suppress evidence on the ground that it was obtained through unconstitutional means. See Gordon, 895 F.2d at 613 (finding "[u]nder California law, a defendant can move to suppress evidence on the basis that it was obtained in violation of the fourth amendment."). Hence, because Petitioner could have challenged the validity of his arrest and sought the suppression of evidence resulting from the allegedly unlawful arrest in state court, his claim is not cognizable. See Terrovona v. Kincheloe, 912 F.2d 1176, 1177 (9th Cir. 1990) (habeas claim barred by Stone where petitioner claimed his arrest "violated the Fourth Amendment

8

prohibition against unreasonable seizures because the police lacked probable cause and no exigent circumstances were present").

### 5. Petitioner's Fourth Amendment Claim Would Otherwise Fail on its Merits

Finally, even if Petitioner's Fourth Amendment claim was not barred under Tollett or Stone, it fails for the reasons discussed in Section B.4.a.i., below.

Accordingly, the state court's denial of Petitioner's claim was not contrary to or an unreasonable application of clearly established federal law. Habeas relief is, thus, not warranted on Claim One.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

### 1. Background

In Claim Two, Petitioner contends his trial counsel rendered ineffective assistance by failing to move to suppress illegally obtained evidence, failing to correspond with Petitioner, and misinforming Petitioner regarding the state law requirement that accomplice testimony be corroborated. Pet. at 5-6.

### 2. State Court Opinion

The Orange County Superior Court denied Petitioner's claim, finding his arguments to be conclusory and unsupported by the evidence. Lodg. 5 at 3.

### 3. Legal Standard

As explained above, Tollett bars claims of pre-plea constitutional violations except when the voluntary and intelligent nature of the guilty plea itself is at issue. Tollett, 411 U.S. at 267. The Court in Tollett found that a habeas petitioner may "attack the voluntary and intelligent character of the guilty plea" based on pre-plea ineffective assistance of counsel "by showing that the advice he received from counsel was not within the . . . range of competence demanded of attorneys in criminal cases." Id. at 267-68 (internal quotations omitted).

Under Strickland v. Washington, a petitioner presenting an ineffective assistance of counsel claim must meet a two-prong test establishing: (1) counsel's

1  performance was deficient, and (2) prejudice resulted from the deficient performance.
2  466 U.S. 668, 687 (1984).  The Supreme Court has held "that the two-part <u>Strickland</u>
3  <u>v. Washington</u> test applies to challenges to guilty pleas based on ineffective assistance
4  of counsel."  <u>Hill v. Lockhart</u>, 474 U.S. 52, 58-59 (1985); <u>see also</u> <u>Missouri v. Frye</u>,
5  566 U.S. 134, 138 (2012).

6      "In the context of guilty pleas, the first half of the <u>Strickland v. Washington</u>
7  test is nothing more than a restatement of the standard of attorney competence
8  already set forth" by the Supreme Court.  <u>Hill</u>, 474 U.S. at 58.  "The second, or
9  'prejudice,' requirement, on the other hand, focuses on whether counsel's
10 constitutionally ineffective performance affected the outcome of the plea process.  In
11 other words, in order to satisfy the 'prejudice' requirement, the defendant must show
12 that there is a reasonable probability that, but for counsel's errors, he would not have
13 pleaded guilty and would have insisted on going to trial."  <u>Id.</u> at 59.

14      **4.**     **Petitioner's Counsel was Not Ineffective**

15      **a.**     **Suppression Motions**

16      First, Petitioner faults his trial counsel for failing to move to suppress illegally
17 obtained evidence.  Pet. at 5.  The Court presumes Petitioner's claim is premised on
18 the same grounds he raised in the California Supreme Court: counsel failed to (1)
19 move to suppress identification evidence, (2) move to suppress unidentified "tangible
20 and intangible evidence," (3) move to suppress statements from Petitioner's
21 accomplice, Shakial Boulton, made "under coercion (duress)," and (4) explain to
22 Petitioner why these motions were meritless.  Lodg. 8 at 5-6.

23      Petitioner, however, fails to present any argument explaining how trial
24 counsel's alleged failure in this regard rendered his plea involuntary.  Such conclusory
25 claims are insufficient to warrant habeas relief.  <u>James v. Borg</u>, 24 F.3d 20, 26 (1994)
26 (holding conclusory allegations which are not supported by a statement of specific
27 facts do not warrant habeas relief).

28

1    Nevertheless, as discussed below, the Court has considered Petitioner's
2 arguments regarding his proposed suppression motions and finds these proposed
3 motions lack merit.

4                    **i.    Identification Evidence**

5    The Court presumes Petitioner's arguments regarding suppressing the
6 identification evidence are the same as those he proposed to his trial counsel before
7 his plea.  Specifically, Petitioner urged his trial counsel to argue that the identification
8 procedure was unduly suggestive, dkts. 8-17 at 29-30; 8-18 at 1-2, and the
9 identification evidence was the product of Petitioner's allegedly illegal arrest, dkt. 8-20
10 at 17.
11    First, although identification testimony resulting from unnecessarily suggestive
12 identification procedures implicates due process principles, see Perry v. New
13 Hampshire, 565 U.S. 228, 238-39 (2012), suppression of the identification is not
14 required where, under the totality of the circumstances, the identification of the
15 defendant was reliable.  See Neil v. Biggers, 409 U.S. 188, 199 (1972); Manson v.
16 Brathwaite, 432 U.S. 98, 114 (1977) ("[R]eliability is the linchpin in determining the
17 admissibility of identification testimony").  Here, Petitioner did nothing more than
18 present his trial counsel with an extensive summary of the legal precedent on the
19 admissibility of identification evidence prior to his guilty plea.  Petitioner has made no
20 attempt to apply this precedent to the facts of his case to show the factors for
21 considering the admissibility of identification evidence weigh in favor of exclusion.
22 See Biggers, 432 U.S. at 199-200 (setting forth five factors to be considered in
23 determining whether an identification is reliable despite an unnecessarily suggestive
24 procedure: (1) the witness's opportunity to view the criminal at the time of the crime;
25 (2) the witness's degree of attention; (3) the accuracy of the witness's prior description
26 of the criminal; (4) the witness's level of certainty; and (5) the length of time between
27 the crime and the identification).
28

1    Second, Petitioner cannot show the identification evidence should have been
2 suppressed as the product of an illegal arrest. "[A] warrantless arrest by a law officer
3 is reasonable under the Fourth Amendment where there is probable cause to believe
4 that a criminal offense has been or is being committed." Devenpeck v. Alford, 543
5 U.S. 146, 152 (2004) (citations omitted). Petitioner argues his arrest was illegal
6 because the victim was initially unable to identify Petitioner as the suspect during a
7 field showup and the arresting officer omitted from the probable cause declaration the
8 fact that the victim was initially unable to identify Petitioner. Pet. at 5. However, the
9 victim was able to positively identify Petitioner after moving closer to Petitioner. Id.;
10 dkt. 8-16 at 1. Petitioner has not presented any authority suggesting an identification
11 made by a victim only after moving closer to a suspect is insufficient probable cause
12 to support an arrest. Similarly, although the arresting officer did not include in his
13 probable cause declaration that the victim initially failed to identify Petitioner, dkt. 8-
14 15 at 23, Petitioner has not shown the probable cause declaration was defective for
15 failing to include this information where the declaration accurately stated the victim
16 ultimately made a positive identification, id.

17    Finally, other overwhelming evidence provided probable cause for Petitioner's
18 arrest. "Whether probable cause exists depends upon the reasonable conclusion to be
19 drawn from the facts known to the arresting officer at the time of the arrest."
20 Devenpeck, 543 U.S. at 152. Here, three officers viewed Petitioner on surveillance
21 video of the crime prior to his arrest, dkts. 8-15 at 29-30; 8-16 at 4, 6; Petitioner was
22 detained while riding in a car matching the description of the getaway car, dkt. 8-15 at
23 30; officers recovered items used in and taken during the crime inside the car, id.; dkt.
24 8-16 at 1, 4, 6; and the victim was able to identify the getaway car by its
25 distinguishable engine sound and headlights, dkt. 8-16 at 5. These facts, alone,
26 constituted probable cause for Petitioner's arrest.

27    Hence, a motion to suppress the identification would have been meritless and
28 Petitioner's counsel was not ineffective for failing to make it.

### ii. Tangible and Intangible Evidence

Next, Petitioner urged his trial counsel to move to suppress "tangible and intangible evidence" acquired as a result of an illegal search and seizure. Dkt. 8-20 at 17. Petitioner does not specify what search and seizure he is challenging, what "tangible and intangible evidence" should have been suppressed, or on what basis he believed the unidentified search and seizure to be illegal. Rather, he suggests that an unlawful detention will result in the "supress[ion of] all evidence after the detention." Dkt. 8-18 at 10.

To the extent Petitioner attempts to argue the unidentified search and seizure was illegal because (1) he was detained without reasonable suspicion, dkt. 8-17 at 13-14; (2) a pat down search was unlawfully conducted,[5] id. 8-17 at 14-16; (3) a search could not have been justified based on Petitioner's probation status,[6] id. at 16-17; or (4) evidence was obtained through an unlawful detention or arrest, id. at 17-18, Petitioner, once again, merely presented a summary of legal authority and not any explanation or application of this authority to the facts of his case. Moreover, a review of the record before the Court has not revealed any basis to support Petitioner's apparent proposed arguments in favor of suppression. Finally, to the extent Petitioner argues this unidentified "tangible and intangible evidence" should have been suppressed based on the alleged illegal arrest discussed in subsection i, above, Petitioner's argument fails for the same reasons already stated.

---

[5] The record before the Court does not contain any information regarding a pat down search of any of the suspects. To the extent the record contains any reference to the search of a person, Petitioner's accomplice, Jordan Morua, was searched incident to his arrest and $50.80 was located in his pocket. Dkt. 8-16 at 6.

[6] Petitioner provided trial counsel a summary of legal precedent that "a probation search condition does not justify an illegal search if the condition is unknown to the officer." Dkt. 8-17 at 16-17. The only probation searches apparent from the record were conducted at the homes of Petitioner and his accomplice Shakial Boulton. Dkt. 8-16 at 2, 7. The probation searches at Petitioner's homes were conducted after his arrest and with the knowledge of Petitioner's probationary status. Dkts. 8-15 at 22; 8-16 at 7.

13

### iii. Third Party Confession

Finally, Petitioner pressed his trial counsel to move to suppress the third-party confession of accomplice Shakial Boulton on the basis of coercion. Dkts. 8-19 at 23-25; 8-20 at 17; 8-21 at 5-7, 11-12. Petitioner appears to argue Boulton's confession was coerced because: (1) the officer pointedly questioned the suspects about "what [their] activities were over the past several hours" before their detention, which produced "inconsistencies in their stories," dkt. 8-21 at 5-7, 11-12; and (2) statements were obtained from the suspects as a product of an illegal arrest and search, dkt. 8-20 at 4-7.

The use of an involuntary confession violates a criminal defendant's right to due process under the Fourteenth Amendment. Blackburn v. Alabama, 361 U.S. 199, 205 (1960); DeWeaver v. Runnels, 556 F.3d 995, 1002-03 (9th Cir. 1990). A confession is coerced or involuntary if "the defendant's will was overborne at the time he confessed." Lynumn v. Illinois, 372 U.S. 528, 534 (1963). Coercion can be mental or physical, but to render a statement involuntary, coercion must exist to such a degree that the statement is not "the product of an essentially free and unconstrained choice by its maker." Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973); see also Blackburn, 361 U.S. at 206.

In determining the voluntariness of a confession, the court must consider "the totality of all the surrounding circumstances - both the characteristics of the accused and the details of the interrogation." United States v. Preston, 751 F.3d 1008, 1016 (9th Cir. 2014); Doody v. Ryan, 649 F.3d 986, 1008 (9th Cir. 2011). Relevant factors include the youth of the defendant, his intelligence, the location and length of detention, the prolonged nature of the questioning, use of psychological or other ploys (i.e. guilt or fear), the use of physical punishment such as the deprivation of food or sleep, and any failure to advise the defendant of her constitutional rights. See Withrow v. Williams, 507 U.S. 680, 693-94 (1993); Schneckloth, 412 U.S. at 226; Doody, 649 F.3d at 1008-09.

14

Petitioner points to questioning of the suspects, including Boulton, at the scene of their arrest before they were transported to the police station. Dkt. 8-21 at 5-7, 11-12. However, even assuming Petitioner had standing to contest statements by Boulton and others, Petitioner has not explained how this initial investigatory questioning was impermissibly coercive, other than to state generally that the questioning was directed at the suspects' activity before their detention. Moreover, Petitioner does not allege anyone, including Boulton, confessed at the time of this questioning at the scene of their arrests. Rather, it was not until detectives questioned Boulton at the police station that he confessed to his involvement in committing the robberies with Petitioner. Dkt. 8-16 at 11-12.

### b. **Failing to Correspond**

Next, Petitioner alleges his trial counsel was ineffective because he failed to respond to inquiries from Petitioner and his family, particularly related to Petitioner's proposed motions. Pet. at 6; dkt. 8-15 at 4; dkt. 8-16 at 15-30; dkt. 8-17 at 1-30; dkt. 8-18 at 1-30; dkt. 8-19 at 1-30; dkt. 8-20 at 1-30; dkt. 8-21 at 1-12. However, as discussed above, Petitioner has not shown any of his proposed motions had merit. As such, Petitioner cannot show that further correspondence among trial counsel, Petitioner, and Petitioner's family regarding these motions would have convinced Petitioner to reject the plea offer and proceed to trial.

### c. **Misinforming Petitioner About Corroboration of Accomplice Testimony**

Finally, Petitioner faults his trial counsel for misinforming him about the need under section 1111 of the California Penal Code[7] for the prosecution to corroborate

---

[7] Under section 1111 of the California Penal Code, "[a] conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." Cal. Pen. Code § 1111.

15

1 testimony of an accomplice before that testimony could be considered as evidence of
2 Petitioner's guilt.  Pet. at 6.  Petitioner's argument appears to be premised on his past
3 assertion that he asked his trial counsel at the time of the plea offer why an offer had
4 been made, to which trial counsel explained the prosecution was having "trouble
5 finding witnesses" but that "[the prosecution] just need[ed Petitioner's] co-defendant
6 to testify."  Dkt. 8-15 at 5.  Petitioner implies that he did not understand at the time,
7 and his trial counsel failed to inform him, that this accomplice's testimony would have
8 to be corroborated by independent evidence pursuant to section 111 of the California
9 Penal Code.

10      Petitioner's argument, however, is belied by the record that demonstrates
11 Petitioner was well aware that California law required the corroboration of accomplice
12 testimony and Petitioner raised this issue with his trial counsel prior to his guilty plea.
13 Dkts. 8-18 at 11; 8-19 at 3-8; 8-20 at 20-21.

14      Ultimately, Petitioner cannot show his trial counsel rendered deficient
15 performance or that but for counsel's alleged ineffectiveness, Petitioner would have
16 rejected his plea and insisted upon going to trial.  Accordingly, the state court's denial
17 of Petitioner's claim was not contrary to or an unreasonable application of clearly
18 established federal law.  Habeas relief is, thus, not warranted on Claim Two.

## VII.
## **RECOMMENDATION**

21     IT IS THEREFORE RECOMMENDED that the District Court issue an
22 Order: (1) accepting this Final Report and Recommendation; (2) denying the Petition;
23 and (3) dismissing this action with prejudice.

25 Dated:  April 6, 2021

          HONORABLE KENLY KIYA KATO
          United States Magistrate Judge